IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| LATITUS ROMALE MENYWEATHER, <br><br> Plaintiff, <br><br> vs. <br><br> DEPT. OF CORRECTIONAL SERV., SCOTT FRAKES, Director; RANDY T. KOHL, medical director; DR. KATHLEEN OGDEN, O.C.C. Health Coordinator; PEGGY ANTLEY, P.A.C. O.C.C. Physician Assistant; MARGARET ANTLEY, P.A.; BARB LEWIEN, d.c.c. Warden; DR. NATAILIE BAKER, mental health director; DR. DAVID SHRAD, O.C.C. Dentist; DR. ODGEN, T.S.C.I. Dentist; and DR. SAXION, L.C.C. Dentist; <br><br> Defendants. | 4:17CV3041 <br><br> **MEMORANDUM AND ORDER** |

Plaintiff filed a Complaint and a Supplement to that Complaint on March 27, 2017. ([Filing No. 1](); [Filing No. 2]().) He has been given leave to proceed in forma pauperis. ([Filing No. 9]().) Plaintiff paid his initial partial filing fee on June 12, 2017. (*See* Docket Sheet.) The court now conducts an initial review of Plaintiff's Complaint to determine whether summary dismissal is appropriate under [28 U.S.C. §§ 1915(e)]() and [1915A](). For the reasons that follow, the court finds Plaintiff's pleadings do not state any claims on which relief may be granted. However, the court will allow Plaintiff to file an amended complaint.

# I. SUMMARY OF COMPLAINT AND SUPPLEMENT

Plaintiff is a prisoner currently confined at the Lincoln Correctional Center ("LCC"). ([Filing No. 1 at CM/ECF p. 1](#).) He names Scott Frakes ("Frakes"), Director of the Nebraska Department of Correctional Services ("NDCS"), Barb Lewien, Warden of the Omaha Correctional Center ("OCC"), multiple medical personnel employed by NDCS, and any known and unknown NDCS employees as Defendants in his Complaint. (*Id.* at CM/ECF pp. 9-12.) He sues Frakes in his official capacity. (*Id.* at CM/ECF p. 9.) He sues all other Defendants in their official and individual capacities. (*Id.* at CM/ECF pp. 9-12.) Plaintiff seeks monetary relief. (*Id.* at CM/ECF p. 6.)

On December 14, 2015, Dr. Odgen, employed at the Tecumseh State Correctional Institution ("TSCI"), performed oral surgery on Plaintiff and failed to remove all of his infected teeth. (*Id.* at CM/ECF p. 13.) On October 21, 2016, Dr. David Shrad, employed at OCC, sectioned one of Plaintiff's teeth (tooth #14) into three parts, but he was unable to remove any of the tooth roots. (*Id.* at CM/ECF pp. 13, 39.) Dr. Shrad requested a referral that day for Plaintiff to see an oral surgeon "ASAP" for complete removal. (*Id.*) Dr. Hustad approved it that same day. (*Id.* at CM/ECF p. 39.) Plaintiff alleges that, in the ten days that he waited to see the oral surgeon, he became sick with fever, vomited blood, and was in pain, with no medication prescribed by Dr. Shrad. (*Id.* at CM/ECF p. 13.)

On November 3, 2016, Dr. Thomson, an outside specialist, performed oral surgery on tooth #14 and Plaintiff felt better. (*Id.* at CM/ECF p. 14.) However, Plaintiff's face swelled within three days of the surgery. (*Id.*) He was given antibiotics and an oral mouth wash. (*Id.*) Plaintiff claims that the infection returned thereafter but medical staff at OCC denied him treatment for three months because they did not believe him. (*Id.* at CM/ECF pp. 14-15.)

On December 8, 2016, Plaintiff met with Dr. Baker, a mental health practitioner employed at NDCS, based on the opinion of medical staff that Plaintiff

is delusional and mentally ill. (*Id*. at CM/ECF p. 15.) On December 28, 2016, on the orders of Dr. Baker, Plaintiff was transferred from OCC to the medical clinic at the Diagnostic and Evaluation Center ("DEC") and placed in a suicide cell for observation. (*Id*.) Plaintiff states that, while at DEC, x-rays confirmed that he had an infection in his mouth. (*Id*.) Dr. Nygen prescribed Plaintiff an antibiotic and referred him to speak with Dr. Hustad. (*Id*. at CM/ECF p. 16.) Plaintiff alleges that Dr. Hustad examined a lump on his temple and on his back, and promised Plaintiff that medical staff at OCC would fix his mouth and perform an MRI. (*Id*.)

On January 18, 2017, upon his return to OCC, medical staff took only an x-ray of Plaintiff. (*Id*.) Plaintiff claims he was transferred back to DEC because medical staff at OCC refused to help him any further. (*Id*.) Subsequently, Plaintiff saw an outside specialist (name unknown) who pulled a tooth of Plaintiff's that Dr. Thomson broke in the process of removing tooth #14. (*Id*.) Plaintiff was placed on an antibiotic. (*Id*.) Plaintiff alleges that the infection returned and that he was sent to segregation in the mental health unit "for trying to see medical after puking all morning," and where no one from mental health or medical helped him. (*Id*. at CM/ECF p. 17.)

On February 1, 2017, Dr. Saxion, employed at LCC, prescribed Plaintiff another antibiotic because his mouth was still infected. (*Id*.) Plaintiff was no longer in pain while taking the antibiotic but was still spitting "abscess" from his mouth. (*Id*.) On February 8, 2017, Dr. Saxion pulled a tooth of Plaintiff's still exposed to the root after all previous surgeries and conducted a biopsy of the inside of Plaintiff's mouth. (*Id*.) Plaintiff states the biopsy results were negative for infection because Dr. Saxion sampled only the non-infected side of his mouth. (*Id*.) Plaintiff maintains that the infection still exists possibly in his blood and throughout his body, causing him sickness and pain, and that medical staff refuse to treat it because they believe he is delusional. (*Id*. at CM/ECF pp. 17, 20.) He alleges that he is not and they are medicating him against his will. (*Id*. at CM/ECF p. 17.)

Plaintiff's attachments to his Complaint reveal details about his healthcare, specifically his dental care. On December 14, 2015, Dr. Ogden (who the court infers Plaintiff refers to as Dr. Odgen at TSCI) prescribed Plaintiff Doxycycline for bleeding gums, instructed Plaintiff on how to improve his dental hygiene, and noted that his #32 wisdom tooth may need extracted if problems persisted after improved hygiene. (*Id.* at CM/ECF pp. 30-32.) On February 4, 2016, Plaintiff was added to the TSCI dental list because he complained to "Dental Medical" that his mouth hurt. (*Id.* at CM/ECF p. 33.) On June 15, 2016, Plaintiff was added to the OCC dental waitlist because he complained to "Dental Medical" that his mouth hurt. (*Id.* at CM/ECF p. 35.) From August of 2016 through October of 2016, Plaintiff intermittently complained about pain in his ear and mouth. (*Id.* at CM/ECF pp. 26-28, 40-42.) On September 15, 2016, medical staff at the Nebraska Medical Center emergency room found that Plaintiff suffered from dehydration and acid reflux after a physical exam, EKG, and chest x-ray. (*Id.* at CM/ECF pp. 45-49.) A neurological exam the next day revealed normal results. (*Id.* at CM/ECF p. 44.) On November 17, 2016, Plaintiff was informed:

> The Physician Assistant's treatment and care on November 10, 2016, was at community standard of care. Your condition did not warrant emergent care and you were scheduled to see the dentist. On November 17, 2016, the dentist examined your concerns and consulted with you after x-rays that there was no decay or abnormalities and to continue antibiotics. The dentist provided you education on proper dental hygiene. . . ."

(*Id.* at CM/ECF p. 29.) On December 1, 2016, Plaintiff was informed:

> Per medical staff, 3 sets of dental x-rays have been completed. None of these show signs of dental problems to include infection. Medical staff will not prescribe medication without evidence of an infection present.

(*Id.* at CM/ECF p. 25.) In a letter dated February 21, 2017, Harbans Deol, Deputy Director of Health Services for NDCS, wrote to Plaintiff that the antibiotic

4

appeared to be helping, that biopsy results were pending, and that "dental staff is closely following your health care and will continue to monitor you closely. If you feel extraction of teeth may solve this problem, please discuss with your dentist." (*Id.* at CM/ECF p. 68.) In a letter dated February 24, 2017, Frakes wrote Plaintiff:

> Since your transfer to DEC Skilled Care, you have seen medical, mental health and dental providers regarding your health care treatment plans. Our dental staff treated you for your infection and did a biopsy, the results of which are pending. Once the results are available, the dental staff will share with you. Our PA has seen you for your lumps. The lump on your back is a lipoma and on the forehead is a cyst. Medical staff will continue to follow them. Please continue to follow up with our providers who are all very concerned about your health.

(*Id.* at CM/ECF p. 69.) As of March 16, 2017, Plaintiff was awaiting a response from his healthcare workers about whether his bothersome teeth could be extracted. ([Filing No. 2 at CM/ECF pp. 2-3](#).)

On February 17, 2017, Plaintiff was served with copies of an Involuntary Medication Hearing Notice, Involuntary Medication Application, and Involuntary Medication Procedures. ([Filing No. 1 at CM/ECF p. 74](#).) On February 23, 2017, three Involuntary Medication Hearing Committee Members held the hearing. (*Id.*) Dr. Baker testified that Plaintiff "continues to assert he has a tooth infection even though he has been treated with antibiotics, and x-rays and a biopsy demonstrate no infection exists." (*Id.* at CM/ECF p. 75.) Dr. Baker testified that Plaintiff has been diagnosed with "Delusional Disorder, Somatic and Persecutory Type," and that he refuses to take psychotropic medications because he believes his issues are medical. (*Id.*) According to Dr. Baker, Plaintiff's mental illness contributes to his aggressive problematic behavior, including a recent assault on a corrections officer. (*Id.*) She testified that she believes that psychotropic medication will assist in treating Plaintiff's aggression and anger, and remedy his delusions about his perceived tooth infection. (*Id.*)

Plaintiff testified that he does not believe he suffers from a mental disorder, but he would consider taking psychotropic medication. (*Id.*) He testified, however, that his saliva contains proof of his infected tooth and that a cyst developed on his back from the tooth infection. (*Id.*) Dr. Baker testified that tests revealed no blood in Plaintiff's saliva and that x-rays of his cyst showed it was not problematic. (*Id.*) The Committee Members found psychotropic medication necessary to treat Plaintiff's serious mental illness and approved involuntary medication of Plaintiff if non-compliant. (*Id.* at CM/ECF pp. 76-77.) Frakes upheld the decision on appeal. (*Id.* at CM/ECF p. 73.)

## II. APPLICABLE STANDARDS OF REVIEW

The court is required to review prisoner and in forma pauperis complaints seeking relief against a governmental entity or an officer or employee of a governmental entity to determine whether summary dismissal is appropriate. *See* 28 U.S.C. §§ 1915(e) and 1915A. The court must dismiss a complaint or any portion of it that states a frivolous or malicious claim, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); 28 U.S.C. § 1915A(b).

Pro se plaintiffs must set forth enough factual allegations to "nudge[] their claims across the line from conceivable to plausible," or "their complaint must be dismissed." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 569-70 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

"The essential function of a complaint under the Federal Rules of Civil Procedure is to give the opposing party 'fair notice of the nature and basis or grounds for a claim, and a general indication of the type of litigation involved.'"

*Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 848 (8th Cir. 2014) (quoting *Hopkins v. Saunders*, 199 F.3d 968, 973 (8th Cir. 1999)). However, "[a] pro se complaint must be liberally construed, and pro se litigants are held to a lesser pleading standard than other parties." *Topchian*, 760 F.3d at 849 (internal quotation marks and citations omitted).

Liberally construed, Plaintiff here alleges federal constitutional claims. To state a claim under 42 U.S.C. § 1983, a plaintiff must allege a violation of rights protected by the United States Constitution or created by federal statute and also must show that the alleged deprivation was caused by conduct of a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993).

### III. DISCUSSION

#### A. Sovereign Immunity

The Eleventh Amendment bars claims for damages by private parties against a state, state instrumentalities, and an employee of a state sued in the employee's official capacity. *See, e.g.*, *Egerdahl v. Hibbing Cmty. Coll.*, 72 F.3d 615, 619 (8th Cir. 1995); *Dover Elevator Co. v. Arkansas State Univ.*, 64 F.3d 442, 446-47 (8th Cir. 1995). Any award of retroactive monetary relief payable by the state, including for back pay or damages, is proscribed by the Eleventh Amendment absent a waiver of immunity by the state or an override of immunity by Congress. *See, e.g.*, *id.*; *Nevels v. Hanlon*, 656 F.2d 372, 377-78 (8th Cir. 1981). Sovereign immunity does not bar damages claims against state officials acting in their personal capacities, nor does it bar claims brought pursuant to 42 U.S.C. §1983 that seek equitable relief from state employee defendants acting in their official capacity.

Plaintiff has sued multiple state employees and seeks monetary relief against them. The Eleventh Amendment bars Plaintiff's claims against all Defendants in

7

their official capacities. Accordingly, Plaintiff's claims for monetary relief against Defendants in their official capacities must be dismissed.

## B. Deliberate Indifference Claims[1]

Here, Plaintiff asserts that Defendants subjected him to cruel and unusual punishment in violation of the Eighth Amendment when they provided inadequate dental care and failed to properly treat and will not now treat an infection in his mouth that affects other parts of his body (i.e. eyes, ears, throat) because they erroneously believe that he is delusional about the infection. The Eighth Amendment's prohibition on cruel and unusual punishment protects prisoners from deliberate indifference to serious medical needs. *Gregoire v. Class*, 236 F.3d 413, 417 (8th Cir. 2000). Plaintiff must demonstrate that (1) he suffered from objectively serious medical needs, and (2) the defendants knew of, but deliberately disregarded, those needs. *See Jolly v. Knudsen*, 205 F.3d 1094, 1096 (8th Cir. 2000) (quoting *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir.1997)).

Plaintiff has been seen and treated by at least 9 doctors, albeit medical, dental, or mental health providers, between December of 2015 and February of 2017. He has been treated with multiple rounds of antibiotics and x-rayed several times during that same period. A biopsy was taken of his mouth and his saliva tested. Plaintiff is not being treated further for any infection because, after a battery of surgeries, antibiotics, and tests, Plaintiff has been found to be delusional about

---

[1] Plaintiff may also be attempting to assert a claim based upon involuntary medication, however, "[t]he Due Process Clause permits the State to treat a prison inmate who has a serious mental illness with antipsychotic drugs against his will, if the inmate is dangerous to himself or others and the treatment is in the inmate's medical interest." *Walton v. Norris*, 59 F.3d 67, 68 (8th Cir. 1995) (citing *Washington v. Harper*, 494 U.S. 210, 227 (1989)).

any infection. Assuming that Plaintiff is correct, which the court must do at this stage of the pleadings, that he is not delusional and the infection originating in his mouth remains, his allegations sound in negligence and disagreement with diagnosis, not deliberate indifference. Plaintiff appears to concur as he admits in his Complaint that "he was provided with dental, but not proper dental . . . ." ([Filing No. 1 at CM/ECF p. 20](#).) While Plaintiff's allegations against Defendants may be enough to state a plausible claim for negligence or medical malpractice, they are not enough to state a plausible claim for deliberate indifference in violation of the Eighth Amendment. *See [Estelle v. Gamble](#)*, 429 U.S. 97, 106 (1976) (holding that mere negligence or medical malpractice are insufficient to rise to a constitutional violation); *[Bender v. Regier](#)*, 385 F.3d 1133, 1137 (8th Cir. 2004) (stating that "an inmate's mere disagreement with the course of his medical treatment fails to state a claim of deliberate indifference"). He must raise those claims in the proper state forum along with any additional state law claims arising out of the circumstances.[2]

On its own motion, the court will provide Plaintiff with an opportunity to file an amended complaint that states a claim upon which relief may be granted.[3] Failure to file an amended complaint within the time specified by the court will result in the court dismissing this case for failure to state a claim and without further notice to Plaintiff.

---

[2] Plaintiff also asserts Defendants caused him intentional infliction of emotional distress by questioning his sanity.

[3] Plaintiff should also note that he does not allege for some of Defendants (Randy T. Kohl, Dr. Kathleen Ogden, Peggy Antley, Margaret Antley, Barb Lewien) that they had any personal involvement in his dental care or for any infection not now being treated. This is an alternative reason for finding that he has failed to state a plausible claim against those Defendants. *See [Krych v. Hvass](#)*, 83 F. Appx. 854, 855 (8th Cir. 2003) (unpublished) (finding merely listing individuals as defendants in a complaint and not alleging personal involvement in the constitutional violations insufficient to state a claim).

IT IS THEREFORE ORDERED that:

1. Plaintiff shall file an amended complaint by **July 29, 2017**, that states a claim upon which relief may be granted against Defendants. Failure to file an amended complaint within the time specified by the court will result in the court dismissing this case for failure to state a claim and without further notice to Plaintiff.

2. Plaintiff is ordered not to file any document aside from the amended complaint without first obtaining leave of the court.

3. The clerk of the court is directed to set a pro se case management deadline using the following text: **July 29, 2017**: check for amended complaint.

Dated this 29th day of June, 2017.

BY THE COURT:

s/ *Richard G. Kopf*
Senior United States District Judge